IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 03-CV-60626-MARRA/SELTZER

ESTHER YONG, individually and as personal )
representative of the estate of PETER CHOON )
MIN YONG, et al., )
)
               Plaintiffs )
)
vs. )
)
EMBRAER-EMPRESA BRASILEIRA DE )
AERONAUTICA, S.A., a foreign corporation for )
profit, et al. )
               Defendants. )
-------------------------------------------------------------- x

## MEMORANDUM OF LAW OF DEFENDANT EMBRAER-EMPRESA BRASILEIRA DE AERONAUTICA, S.A. IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Defendant EMBRAER-EMPRESA BRASILEIRA DE AERONAUTICA, S.A. ("EMBRAER") submits this Memorandum of Law in Support of its Motion for an Order dismissing the Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the ground that this Court lacks subject matter jurisdiction over plaintiffs' claims against EMBRAER under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C.A. §§ 1330 & 1602-1611.

### RELEVANT FACTS

1.        **The Air Fiji Flight 121 Crash**

On July 24, 1999, Air Fiji Flight 121 from Nausori, Fiji to Nadi, Fiji crashed near Delailasakau, Fiji (the "Accident"), killing the pilot, co-pilot, and all fifteen passengers. Plaintiffs in this action are the wife (Katherine Mary Kohlenberg) and two daughters (Ruth Vera Kohlenberg and Hannah Elizabeth Kohlenberg) of Christopher Frederick Kohlenberg, one of those passengers. See Plaintiffs' (State Court) Complaint, ¶2, Ex. "1" to defendant EMBRAER's Notice of Removal, attached as Exhibit "A" to the Affidavit of Stephen R. Stegich ("Stegich Aff.") submitted herewith.

The aircraft involved in the Accident was an EMB-110 Model aircraft, Fiji Reg. No. DQ-AFN, Serial No. 110-416 (the "Aircraft"), designed and manufactured in Brazil by defendant EMBRAER in 1982-83, and sold in Brazil on or about March 19, 1984 to PLM Transportation Equipment Corporation. See Notice of Removal, Ex. "A" to Stegich Aff.; Affidavit of Carlos Rocha Villela in Support of EMBRAER's Notice of Removal ("Villela Affidavit"), attached as Ex. "2" to Notice of Removal, ¶10, and Export Certificate of Airworthiness, Ex. "C" to Villela Aff. After the 1984 sale, EMBRAER never again exercised custody or control over the aircraft for any purpose whatsoever. Villela Aff., ¶11.

2.      **Plaintiffs' Allegations against EMBRAER**

On or about July 24, 2001, plaintiffs commenced this action in the Circuit Court in and for Broward County, 17th Judicial Circuit, and an identical action in this Court. Service of process upon EMBRAER in this action was effected on April 3, 2003, one day after EMBRAER had removed this and two related actions from the Broward County court in order to move to dismiss this and the related actions for lack of subject matter jurisdiction.[1]

---

[1] The action originally commenced in this Court, also "Yong [et al.] v. Embraer [et al.]," was assigned Case No. 01-CV-3145-KING. Three other related actions were commenced in this Court, including "Vaka v. Embraer," Case No. 01-CV-3144-KING, "Andersen v. Embraer," Case No. 01-CV-3146-KING, and "Kohlenberg v. Embraer," Case No. 01-3148-CIV-KING. Identical actions on behalf of each plaintiff were filed in state court and removed to this court. The related actions were noted on the Civil Docket Cover Sheet filed with the removal papers, and separate Notices of Pendency are being filed informing this Court and Judge King of the related actions and suggesting consolidation for decision on like issues, including jurisdictional issues addressed in this motion.

EMBRAER removed this action pursuant to the FSIA removal provision, 28 U.S.C. § 1441(d). See Notice of Removal, Ex. "A" to Stegich Aff., ¶3. Plaintiff's federal Complaint, moreover, alleged jurisdiction under 28 U.S.C. § 1330(a), the FSIA's original jurisdiction provision. See Plaintiffs' (Federal) Complaint, attached as Ex. "B" to Stegich Aff., ¶4. Plaintiff also alleged that "[a]t all relevant times, defendant [EMBRAER] conducted regular and systematic commercial activities in the United States, and, in particular, in the State of Florida." See Plaintiff's (State) Complaint, Ex. "1" to Notice of Removal, ¶6; Plaintiff's (Federal) Complaint, Ex. "B" to Stegich Aff., ¶6.

Plaintiffs' Complaints contain three counts against EMBRAER (and EMBRAER AIRCRAFT CORPORATION ["EAC"], an EMBRAER subsidiary).[2] The first, for "Dangerous and Defective Design and Manufacture of a Product," alleges that EMBRAER (and EAC):

> 7. ...[w]ere in the business of designing, manufacturing, marketing, testing, inspecting and supplying to the general aviation market the subject Embraer Bandeirante aircraft in question herein as well as certain component parts and systems thereof. Said defendants and each of them further were in the business of placing the subject aircraft and/or component parts and systems into the stream of commerce. The subject aircraft and/or component parts and systems were dangerous and defective in design and manufacture and not fit for their intended purposes as defined in its Type Certificate, Type Certificate Data Sheet, and flight manual, and were further dangerous and defective in that, among other things, the subject aircraft lacked a ground proximity warning mechanism.
>
> 8. Said defects legally and proximately caused and contributed to the crash of Air Fiji Flight 121, as set forth herein.

Plaintiffs' (State Court) Complaint, Ex. "1" to Notice of Removal (Ex. "A" to Stegich Aff.), ¶¶7-8. The second count, for "Failure to Warn," alleges that EMBRAER (and EAC):

> 10. [f]ailed to provide or supply adequate advice, briefing, instructions or warnings as to the defects in design and manufacture as alleged herein. Further, although agents and employees of based in defendants' Florida

---

[2] EAC is a Florida corporation and is not a party to this motion. EAC is moving separately to dismiss for *forum non conveniens*.

> maintenance facility[3] traveled annually to Fiji to perform inspections and maintenance of Air Fiji's Embraer aircraft, including the subject aircraft herein, defendants and each of them failed to advise, brief, warn or instruct owners, users or operators, including, as in this case, Air Fiji, of said defectively designed and manufactured airframe and/or component parts and systems as to the proper maintenance, care, inspection and repair thereof.
>
> 11. Said failure to advise, instruct, brief or warn proximately and legally caused and contributed to the crash of Air Fiji Flight 121, as set forth herein.

Plaintiffs' (State Court) Complaint, Ex. "1" to Notice of Removal (Ex. "A" to Stegich Aff.),

¶¶10-11. The third and last count, for "Negligence," alleges that:

> 13. Defendants and each of them were negligent in and about the design and manufacture of the subject aircraft and/or its component parts and systems. Said defendants and each of them were further negligent in and about advising, warning, briefing or instructing owners, users or operators of the subject aircraft and/or its component parts and systems as to said defective design and manufacture. Said defendants were further negligent in and about advising, briefing, instructing or warning owners, users or operators, including Air Fiji, of said aircraft and/or its component parts and systems as to proper care, maintenance, repair and inspection thereof. Said defendants were further negligent in ways not yet known to plaintiffs, who reserve the right to amend this complaint accordingly upon ascertaining said further negligence.
>
> ***
>
> 15. As a proximate and legal result of this accident and deaths of plaintiffs' decedent herein, plaintiffs and the estate suffered economic and losses [*sic*], and plaintiffs additionally suffered non-economic losses in that they were deprived of the care, comfort, solace, support, love, and companionship of decedent, all to their general and special damage.

Plaintiffs' (State Court) Complaint, Ex. "1" to Notice of Removal (Ex. "A" to Stegich Aff.), ¶¶13 & 15.

Plaintiffs allegations principally refer to conduct related to the design, manufacture, and original sale ("release into the stream of commerce") of the Aircraft, all of which would have

---

[3] So in original—for present purposes, defendant will construe "employees of based in defendants' Florida maintenance facility" as "employees of EMBRAER and EAC based in EAC's Florida facility."

occurred on or before March 19, 1984. See Villela Aff., ¶10. In any event, EMBRAER had no direct involvement with the Aircraft after March 19, 1984, id., in the United States or anywhere else.

### 3. Brazilian Government Ownership of EMBRAER

Before proceeding, EMBRAER acknowledges that a crucial issue to this motion—i.e., whether status as a "foreign state" is determined at the time the lawsuit is filed or, as EMBRAER contends here, at the time of the alleged wrongful conduct, is currently before the United States Supreme Court. See Dole Food Co. v. Patrickson, 122 S. Ct. 2657 (2002).[4] EMBRAER itself has been deemed a "foreign state" in products liability litigation based on its status when an aircraft at issue in litigation was designed, manufactured, and sold, see In re Aircrash Disaster Near Monroe, Michigan, 987 F. Supp. 975, 978 (E.D. Mich. 1997), and accordingly has removed state court actions based on existing law, which is discussed herein.

With respect to its FSIA status, defendant EMBRAER is a Brazilian corporation, based in São José dos Campos, State of São Paulo, Brazil, and has never been incorporated under the laws of any other country, including the United States. See Villela Aff., attached as Ex. "2" to Notice of Removal (Ex. "A" to Stegich Aff.), ¶¶1 & 3. EMBRAER was created pursuant to an official Decree Law of the Federative Republic of Brazil enacted on August 19, 1969. See Villela Aff., ¶¶4-6; Brazil Decree Law No. 770, Ex. "A" to the Villela Aff. The Brazilian Government decreed that EMBRAER was being created in order to:

> promote the development of the Brazilian aeronautics industry and related activities, including the design and construction of aircraft and respective accessories, components and equipment, or engaging in technical activities in connection with the production and maintenance of aeronautical material, according to the programs and projects approved by the Executive Branch.

---

[4] Certiorari on the same issues was granted with respect to the companion case, Dead Sea Bromine Co. v. Patrickson, 122 S. Ct. 2658 (2002). The Supreme Court heard oral argument on January 23, 2003.

Decree Law No. 770, Ex. "A" to Villela Aff. The Decree also guaranteed that the Brazilian Government would own a majority of EMBRAER's common stock:

> The initial capital stock of EMBRAER shall be NCr$50,000,000 (fifty million new cruzeiros), corresponding to at least 51% (fifty-one percent) of common registered shares to be subscribed by the Federative Republic of Brazil . . . .
>
> In subsequent issues of common shares as a result of capital increases, the Federative Republic of Brazil shall subscribe to sufficient shares to guarantee a minimum of 51% (fifty-one percent) of the voting capital.

Id., Arts. 4 & 5.

EMBRAER became officially constituted on December 29, 1969. See Villela Aff., Ex. "2" to Notice of Removal (Ex. "A" to Stegich Aff.), ¶6; EMBRAER's Original By-Laws, Ex. "B" to Villela Aff. EMBRAER was established as a Brazilian corporate person ("*sociedade anônima*"). See Villela Aff., ¶6; Original By-laws, Ex. "B" to Villela Aff., Art. 1. The By-laws reiterated the Decree Law No. 770 requirement that the Brazilian Government would continuously own a majority of EMBRAER's voting stock. See Villela Aff., ¶7; Original By-Laws, Ex. "B" to Villela Aff., Art. 6, § 3.

As required by law, the Brazilian Federal Government was EMBRAER's majority owner when the Aircraft involved in the Air Fiji Accident was designed (pre-1978), manufactured (1982-83), and sold new to its first purchaser (March 1984). See Villela Aff., ¶10; Export Certificate of Airworthiness for Serial No. 110-416, PLM Purchase Agreement No. 313-COI/84 dated March 19, 1984, and Certificate Data Sheet No. 7202, Exs. "C"-"E" to the Villela Aff.

On December 7, 1994, EMBRAER auctioned shares to private investors, and at a clearance sale on December 13, 1994, the company became "privatized." Villela Aff., ¶8. The Brazilian Government continued to own a majority of EMBRAER's voting shares, directly or indirectly, until approximately July 29, 1998, and continued to retain other ownership interests in the company. Id. The Brazilian Government thereafter has not owned a majority of

EMBRAER's voting shares or been required by EMBRAER's By-laws to own a majority of the voting shares. Id.

## ARGUMENT

## THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS ACTION AGAINST EMBRAER UNDER THE FSIA

**1.     Fed. R. Civ. P. 12(b)(1)**

The FSIA provides the exclusive basis for obtaining jurisdiction over a "foreign state" in the state and federal courts of the United States. See Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993); Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 611 (1992); Argentine Rep. v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989); Aquamar S.A. v. Del Monte Fresh Produce N.A., Inc., 179 F.3d 1279, 1290 (11th Cir. 1999); Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1543 & 1553 (11th Cir. 1993); Ortego Trujillo v. Banco Central del Ecuador, 17 F. Supp. 2d 1340, 1343-44 (S.D. Fla. 1998).

Under the FSIA, federal district courts have original jurisdiction over actions against "foreign states," see 28 U.S.C. § 1330(a), and actions commenced against foreign states in state courts may be removed pursuant to 28 U.S.C. § 1441(d).[5] However, no state or federal court may hear a civil action against a "foreign state" unless a statutory exception to sovereign immunity exists. See 28 U.S.C. §§ 1330(a) & §§ 1604-07; Altmann v. Republic of Austria, 142 F. Supp. 2d 1187, 1197 (C.D. Cal. 2001), aff'd, 317 F.3d 954 (9th Cir. 2002); see also World Wide Minerals, Ltd. v. Republic of Kazakhstan, 296 F.3d 1154, 1161 n.10 (D.C. Cir. 2002) (immunity defense may be raised at any time because, if valid, it means court lacks power to hear the case), cert. denied, 123 S. Ct. 1250 (2003). In deciding a motion to dismiss for lack of

---

[5] The entire action may be removed against all defendants, with or without their consent. In re Surinam Airways Holding Co., 974 F.2d 1255, 1258-60 (11th Cir. 1992); Arango v. Guzman Travel Advisories Corp., 621 F.2d 1371, 1377 (5th Cir. 1980). (EAC, for the sake of simplicity, has submitted a Consent and Joinder in the removal.)

jurisdiction, the court may look beyond the pleadings to resolve any factual disputes concerning the existence of jurisdiction. Kern v. Oesterreichische Elektrizitaetswirtschaft AG, 178 F. Supp. 2d 367, 378 (S.D.N.Y. 2001).

In this case, EMBRAER contends that it is entitled to immunity under the FSIA because it was a "foreign state" when the Aircraft was designed, manufactured, and sold. Under existing law, the majority rule is that FSIA jurisdiction may be predicated on a defendant's status at the time the alleged wrongful acts occurred. See, e.g., General Electric Capital Corp. v. Grossman, 991 F.2d 1376, 1381-82 (8th Cir. 1993); Gould Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445 (6th Cir. 1988); Cargill International, S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1016 (2d Cir. 1993); Ocasek v. Flintkote Co., 796 F. Supp. 362 (N.D. Ill. 1992). EMBRAER's own status has been determined under this principle. See In re Aircrash Disaster Near Monroe, Michigan, 987 F. Supp. 975, 978 (E.D. Mich. 1997).

Further discussion on this issue would be premature, because the right of a "privatized" defendant to invoke the FSIA based on prior status currently is before the U.S. Supreme Court, where the issue already has been briefed and argued. See Dole Food Co. v. Patrickson, 122 S. Ct. 2657 & 2658 (2002). EMBRAER must concede that it was not a "foreign state" when the Accident occurred or when suit was filed. If the "time of alleged wrongful conduct" rule is sustained in Dole Food, however, EMBRAER will be a "foreign state" and entitled to have this case dismissed because no exception to immunity applies.

## 2. FSIA Jurisdictional Requirements

Jurisdiction over a "foreign state" in federal court is authorized by 28 U.S.C. § 1330, which provides in pertinent part:

> (a) The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section

> 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under section 1605-1607 of this title or under any applicable international agreement.
>
> (b) Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title.

However, 28 U.S.C. § 1604 precludes the court from hearing the action if the foreign state is entitled to immunity. Argentine Rep. v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989); Alejandre v. Telefonica Larga Distancia de Puerto Rico, Inc., 183 F.3d 1277, 1282 (11th Cir. 1999); Ampac Group Inc. v. Republic of Honduras, 797 F. Supp. 973, 975-76 (S.D. Fla. 1992), aff'd, 40 F.3d 389 (11th Cir. 1994) (Table).

A "foreign state" is presumed immune unless an exception to sovereign immunity exists under 28 U.S.C. §§ 1605-07. See 28 U.S.C. §§1330(a) & 1604; Saudi Arabia v. Nelson, 507 U.S. at 355; Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 488-89 (1993); Transamerica Leasing, Inc. v. La Republica de Venezuela, 200 F.3d 843, 847 (D.C. Cir. 2000); Honduras Aircraft Registry, Ltd. v. Government of Honduras, 129 F.3d 543, 546-47 (11th Cir. 1997).

As demonstrated below, EMBRAER qualifies as a "foreign state" under the "time of alleged acts" rule, and it is clear that no exception to immunity applies.

    a.    **EMBRAER Is a "Foreign State"**

Section 1330(a), quoted above, provides for jurisdiction over a "foreign state as defined in Section 1603(a) of this title." Section 1603(a) provides in pertinent part:

> (a) A "foreign state" ... includes ... an agency or instrumentality of a foreign state as defined in subsection (b).

In turn, subsection (b) provides that an "agency or instrumentality of a foreign state" means any entity:

> (1) which is a separate legal person, corporate or otherwise, and
>
> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision of a foreign state, and
>
> (3) which is neither a citizen of a State of the United States nor created under the laws of any third country....

28 U.S.C. § 1603(b)(1)-(3).

As noted above, the existing majority rule is that status as an "agency or instrumentality of a foreign state" under the FSIA in product liability suits is determined at the time of the alleged wrongful conduct, *i.e.*, the time the product in question was designed, manufactured, and sold. The Eastern District of Michigan, for example, so held in denying a motion to remand actions commenced against Embraer. See In re Aircrash Disaster Near Monroe, Michigan, 987 F. Supp. 975, 978 (E.D. Mich. 1997) (EMBRAER "foreign state" when particular aircraft designed, manufactured and sold); accord Kern v. Jeppesen Sanderson, Inc., 867 F. Supp. 525, 530-31 (S.D. Tex. 1994) (privatized manufacturer of two aircraft involved in separate accidents in Nepal entitled to invoke FSIA); Pere v. Nuovo Pignone, Inc., 150 F.3d 477 (5th Cir. 1998) (dismissing action arising out of turbine explosion in Angola against Italian manufacturer that had been "foreign state" but was privatized before suit commenced).

EMBRAER was a "foreign state" when all of the allegations in plaintiff's Complaint related to design, manufacture, and sale of the Aircraft occurred. EMBRAER had no further involvement with the Aircraft.

### b. No Exception to Immunity Applies to Plaintiffs' Action

The plaintiff has the burden of going forward with a showing that an exception applies. Cargill Int'l S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1016 (2d Cir. 1993); Kern v.

Oesterreichische Elektrizitaetswirtschaft AG, 178 F. Supp. 2d 367, 373 (S.D.N.Y. 2001); Good v. Aramco Services Co., 971 F. Supp. 254, 256 (S.D. Tex. 1997).[6]

Plaintiff appears to allege that the "commercial activities" exception of Section 1605(a)(2) is applicable. See Plaintiffs' Federal Complaint, ¶6. EMBRAER does not dispute that the design, manufacture, and sale of civilian aircraft are "commercial activities." Cf. Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1544 (11th Cir. 1993) (design and manufacture of automobiles in France in order to sell them throughout the world is a "quintessential commercial activity").

However, even if a "foreign state" carries on commercial activities within the United States, "that fact alone does not subject it to [jurisdiction]." Compania Mexicana de Aviacion, S.A. v. United States District Court, 859 F.2d 1354, 1360 (9th Cir. 1988); accord Stena Rederi AB v. Comision de Contratos, 923 F.2d 380, 386 (5th Cir. 1991); Casalino v. Ente Ferrovie dello Stato, 779 F. Supp. 338, 341 (S.D.N.Y. 1991). The FSIA "commercial activities" exception provides specifically that:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
>
> ***
>
> (2) in which the action is [1] based upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).

---

[6] Most of the FSIA exceptions to immunity are completely irrelevant to this case. These include, in Section 1605, subsections: (1) waiver of immunity; [(2) the commercial activities exception, is discussed in the main text]; (3) property confiscations in violation of international law; (4) rights in immovable property located within the U.S.; (5) tort actions that are not "commercial activities" and that occur *entirely* in the U.S.; (6) actions to enforce agreements to arbitrate disputes in the U.S.; and (7) state-sponsored terrorism. Subsections (b) and (c) involve maritime liens. Subsection (d) involves ship mortgage foreclosures. Sections 1606 and 1607, also referenced in Sections 1330(a) and 1604, relate respectively to punitive damages and counterclaims, neither of which are at issue here.

In this litigation, plaintiffs are claiming wrongful death and survival damages. Such actions are "based upon ... those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case." Nelson, 507 U.S. at 357 (jurisdiction did not exist in U.S. over action by U.S. citizen who had been recruited for employment in the U.S. but was suing for imprisonment and torture in Saudi Arabia by Saudi police authorities); Santos v. Compagnie Nationale Air France, 934 F.2d 890, 893 (7th Cir. 1991) (an action is "based upon" the elements that prove the claim). The "based upon" requirement is construed narrowly. Good v. Aramco Servs. Co., 971 F. Supp. 254, 257 (S.D. Tex. 1997).

Accordingly, for one of the three clauses of the "commercial activities" exception to apply, plaintiffs' causes of action must be [1] based upon EMBRAER's "commercial activities *in the United States*," or [2] upon "an act" that EMBRAER *performed in the United States*, or [3] upon "an act" that "*caused a direct effect in the United States.*"

None of these apply.

### (1) The First Clause Does Not Apply Because the Commercial Activities Occurred in Brazil

It is settled that the first clause requires a "sufficient nexus" between the cause of action and the commercial activities in the United States. Stena Rederi AB v. Comision de Contratos, 923 F.2d 380, 386 (5th Cir. 1991); Barkanic v. General Administration of Civil Aviation, 822 F.2d 11, 13 (2d Cir. 1987); Casalino v. Ente Ferrovie dello Stato, 779 F. Supp. 338, 341 (S.D.N.Y. 1991); Darby v. Compagnie Nationale Air France, 769 F. Supp. 1255, 1265 (S.D.N.Y. 1991). "At a minimum, ['based upon'] implies a causal relationship." Kern v. Oesterreichische Elektrizitaerswirtschaft AG, 178 F. Supp. 2d 367 (S.D.N.Y. 2001) (defendant that obtained financing in U.S. was immune from jurisdiction in action for death of plaintiff's children and grandchildren in ski train accident in Austria); see also Federal Ins. Co. v. Richard I. Rubin & Co., 12 F.3d 1270, 1286 (3d Cir. 1993) (first

clause requires (1) a sufficient nexus between the commercial activity and the U.S.; and (2) a substantive nexus between these U.S. commercial activities and the subject matter of the cause of action).

The "commercial activities" upon which plaintiffs' cause of action is based in this litigation are the design, manufacture, and sale of the Aircraft. All of these activities took place in Brazil. Furthermore:

> (e) A "commercial activity carried on in the United States by a foreign state" means commercial activity carried on by such state and *having substantial contact with the United States.*

28 U.S.C. § 1603(e) (emphasis added). Any incidental contacts EMBRAER had with the United States in connection with this Aircraft—for instance, contacts with the first purchaser, which was based in the U.S.—are too insubstantial to constitute "commercial activities carried on in the United States" under the first clause.

For instance, in Compania Mexicana de Aviacion, S.A. v. United States District Court, 859 F.2d 1354, 1360 (9th Cir. 1988), there was no jurisdiction in the U.S. over death actions arising out of a crash in Mexico of an aircraft operated by the Mexican national airline, even though the aircraft had undergone routine servicing in Chicago the day before the accident and was en route to Los Angeles when the crash occurred.

Likewise, in Filus v. LOT Polish Airlines, 939 F. Supp. 199, 203 (E.D.N.Y. 1996), aff'd, 133 F.3d 169 (2d Cir. 1997), passenger families sued a Soviet-owned company that designed and manufactured an aircraft that crashed in Warsaw on a commercial flight from New York. The court concluded that jurisdiction did not exist in the U.S., even if plaintiff's allegations that the Soviet company had provided advice to the operator's engineers in New York proved to be true. According to the court, such an activity "does not rise to the level of 'commercial activity in the United States'."

Case 0:03-cv-60626-JLK   Document 4   Entered on FLSD Docket 04/08/2003   Page 14 of 18

In Tote v. Iberia Int'l Airlines, 649 F. Supp. 41 (E.D. Pa. 1986), there also was no jurisdiction in the U.S. over actions against a commercial airline owned by the Government of Spain, arising out of crash of domestic flight in Spain, even though the airline operated 1500 flights to and from the U.S. annually, had fourteen offices in United States, and had purchased most of its aircraft in United States. Accord Kern v. Jeppesen Sanderson, Inc., 867 F. Supp. 525 (S.D. Tex. 1994) (actions arising out of two separate aircraft accidents in Nepal against aircraft manufacturer majority-owned by a "pooling" of French, German, and Spanish Government interests dismissed on immunity grounds).

Finally, in Kramer v. Boeing Co., 705 F. Supp. 1392 (D. Minn. 1989), no jurisdiction existed over a third-party complaint against a "foreign state"—Sabena, the Belgian national airline—arising out of an on-board fire that occurred in Cameroon and was allegedly caused by the failure of an engine part Sabena had purchased in the U.S.

EMBRAER has not engaged in any "commercial activities in the United States" which could support application of the first clause to any action arising out of the Air Fiji Accident. The Aircraft was designed, manufactured, and sold in Brazil when EMBRAER was a foreign state; EMBRAER has had no involvement with the Aircraft since it ceased to be a foreign state; and any incidental contacts with the Aircraft or operators could not establish a "sufficient" or "substantial" nexus, as required by the first clause.

### (2) The Second Clause Does Not Apply for the Same Reasons as the First

The second clause requires that the action be "based ... upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere." 28 U.S.C. § 1605(a)(2); see also Stena Rederi AB v. Comision de Contratos, 923 F.2d 380, 388 (5th Cir. 1991) (for second clause to apply, plaintiffs' cause of action must be based upon "the act

performed in the United States," and foreign state is not subject to jurisdiction because it performed "any act in the United States" related to commercial activity elsewhere).

This clause is rarely applied and is considered redundant to the first:

> [T]he House Report that accompanied the Immunities Act acknowledges the overlapping nature of clauses one and two, stating that "some or all" of the cases that would come within the scope of clause two would also be within clause one. The "or all" part of this statement is probably the more accurate. The House Report states that acts that establish jurisdiction under clause two "are limited to those which in and of themselves are sufficient to form the basis of a cause of action." Acts that are sufficient in and of themselves to establish a cause of action will almost always (almost, because under clause two the activity in the United States need not itself be a "commercial" act) establish jurisdiction under the analysis we use for clause one.

Santos v. Compagnie Nationale Air France, 934 F.2d 890, 892 n.1 (7th Cir. 1991) (citing H.R. Report No. 1487, 94th Cong., 2nd Sess. 19, *reprinted in* 1976 U.S. Code Cong. & Admin. News 6604, 6618); accord Zedan v. Kingdom of Saudi Arabia, 849 F.2d 1511, 1514 (D.C. Cir. 1988) (legislative history is "crystal clear" that "the acts (or omissions) encompassed in this category are limited to those which in and of themselves are sufficient to form the basis of a cause of action"); Lasagne v. Divi Hotels, 685 F. Supp. 88, 90 (S.D.N.Y. 1988) (addressing first and second clauses simultaneously in action arising out of injuries sustained at overseas hotel).

For instance, in Good v. Aramco Services Co., 971 F. Supp. 254, 259 (S.D. Tex. 1997), the plaintiff alleged that a hospital owned by a "foreign state" failed to provide adequate medical services to the son of an American employee in Saudi Arabia. The court held that the second clause did not apply because, even if the promise of medical benefits had partially induced the father to enter into the relevant employment contract, the cause of action was for negligence against the hospital, not a breach of contract to provide medical care. The "act" upon which the cause of action was based was not in and of itself sufficient to form the basis of a cause of action, and the second clause accordingly was deemed inapplicable.

Similarly, in <u>Casalino v. Ente Ferrovie dello Stato</u>, 779 F. Supp. 338, 341-42 (S.D.N.Y. 1991), the second clause did not apply to an action arising out of a train accident in Italy because all of the alleged negligent acts had been performed in Italy, not in the United States. In <u>Darby v. Compagnie Nationale Air France</u>, 769 F. Supp. 1255, 1265-66 (S.D.N.Y. 1991), the court likewise held that the second clause did not confer jurisdiction with respect to a drowning that had occurred at a hotel in Rio de Janeiro, because the hotel was operated entirely in Brazil.

The second clause therefore is inapplicable because there is an insufficient nexus with the United States.

### (3) The Third Clause Does Not Apply Because the Accident Occurred in Fiji

The third clause requires that the action be "based .... upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a *direct effect* in the United States." (emphasis added)  It is well established by this time that the third clause does not apply to cases where the accident occurred and injury was sustained outside the U.S. <u>See</u>, <u>e.g.</u>, <u>Filus v. LOT Polish Airlines</u>, 907 F.2d 1328, 1333 (2d Cir. 1990) (no jurisdiction over Soviet-owned aircraft designer-manufacturer in actions by U.S. survivors of passengers killed in crash of aircraft in Poland on flight from New York), <u>aff'd</u>, 133 F.3d 169 (2d Cir. 1997); <u>Australian Gov't Aircraft Factories v. Lynne</u>, 743 F.2d 672 (9th Cir. 1984) (U.S. survivors of pilot killed in airplane crash in Indonesia and aircraft owner had no right of action against foreign state that sold aircraft because the "direct effect" was the pilot's death and destruction of aircraft, not injuries to pilot's family or financial loss to aircraft owner); <u>Good v. Aramco Services Co.</u>, 971 F. Supp. 254, 259 (S.D. Tex. 1997) (action alleging failure to provide adequate medical services to son of American employee in Saudi Arabia—third clause did not apply because injury was sustained outside U.S.); <u>Casalino v. Ente Ferrovie dello Stato</u>, 779 F. Supp. 338, 341-42 (S.D.N.Y. 1991) (third clause did not apply because plaintiff sustained injury in Italy); <u>Darby v.</u>

Compagnie Nationale Air France, 769 F. Supp. 1255, 1265-66 (S.D.N.Y. 1991) (third clause did not apply in connection with drowning at hotel in Rio de Janeiro); Keller v. Transportes Aereos Militares Ecuadorianos, 601 F. Supp. 787, 789-90 (D.D.C. 1985) (financial losses of survivors in U.S. was not a "direct effect" of crash of aircraft in Ecuador); see also Compania Mexicana de Aviacion, S.A. v. United States District Court, 859 F.2d 1354, 1360 (9th Cir. 1988) (directives issued by U.S. Federal Aviation Administration following crash in Mexico was not a "direct effect in the United States").

## CONCLUSION

Defendant EMBRAER'S motion to dismiss plaintiffs' Complaint for lack of subject matter jurisdiction should be granted in all respects.

Dated: Miami, Florida
April 8, 2003

>Respectfully submitted,
>
>LAW OFFICES OF JOHN R. PARSONS, P.A.
>
>By: _____
>    John R.W. Parsons, Esq.
>Florida Bar No. 239674
>Ingraham Building
>25 S.E. Second Avenue, Suite 609
>Miami, Florida  33131-1691
>Tel: (305) 374-3103
>Fax: (305) 377-9805
>
>- and -
>
>CONDON & FORSYTH
>Stephen R. Stegich, Esq.
>685 Third Avenue
>New York, New York  10017
>Tel: (212) 490-9100
>Fax: (212) 370-4487
>
>Attorneys for Defendant
>EMBRAER-EMPRESA BRASILEIRA
> DE AERONAUTICA, S.A.