IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MAY -9 AM 10:58

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. FLA - MIA

| | | |
|---|---|---|
| VIKA VAKA, individually and as personal representative of the estate of TEVITA HOLANI MAKA, deceased, et al., | ) ) ) ) | Case No. 01-CV-3144- KING/O'SULLIVAN |
| Plaintiffs | ) ) ) | Case No. 03-CV-60627- KING/O'SULLIVAN |
| vs. | ) ) | |
| EMBRAER-EMPRESA BRASILEIRA DE AERONAUTICA, S.A., a foreign corporation for profit, et al. | ) ) ) ) | |
| Defendants. | ) | |

-----------------------------------------------x

| | | |
|---|---|---|
| ESTHER YONG, individually and as personal representative of the estate of PETER CHOON MIN YONG, et al., | ) ) ) ) | Case No. 01-CV-3145- KING/O'SULLIVAN |
| Plaintiffs | ) ) ) | Case No. 03-CV-60626- KING/O'SULLIVAN |
| vs. | ) ) | |
| EMBRAER-EMPRESA BRASILEIRA DE AERONAUTICA, S.A., a foreign corporation for profit, et al. | ) ) ) ) | |
| Defendants. | ) | |

-----------------------------------------------x

| | | |
|---|---|---|
| KIM ELIZABETH ANDERSEN, individually and as personal representative of the estate of RAY DOUGLAS LLOYD, deceased, et al., | ) ) ) ) | Case No. 01-CV-3146- KING/O'SULLIVAN |
| | ) ) | Case No. 03-CV-60557- KING/O'SULLIVAN |
| Plaintiffs | ) ) | |
| vs. | ) ) | |
| EMBRAER-EMPRESA BRASILEIRA DE AERONAUTICA, S.A., a foreign corporation for profit, et al. | ) ) ) ) | |
| Defendants. | ) | |

-----------------------------------------------x



NYOFFICE 586204v1

| | |
|---|---|
| KATHERINE MARY KOHLENBERG, ) <br> individually and as personal representative ) <br> of the estate of CHRISTOPHER ) <br> FREDERICK KOHLENBERG, deceased, ) <br> et al., ) <br> ) <br> Plaintiffs ) <br> ) <br> vs. ) <br> ) <br> EMBRAER-EMPRESA BRASILEIRA DE ) <br> AERONAUTICA, S.A., a foreign corporation for ) <br> profit, et al. ) <br> Defendants. ) <br> ------------------------------------------------------------ x | Case No. 01-CV-3148-KING/O'SULLIVAN <br><br> Case No. 03-CV-60625-KING/O'SULLIVAN |

## DEFENDANTS' SUGGESTION TO DISMISS PURSUANT TO RULE 12(h)(3) OF THE FEDERAL RULES OF CIVIL PROCEDURE FOR LACK OF SUBJECT MATTER JURISDICTION AND, ALTERNATIVELY, DEFENDANT EMBRAER'S MOTION TO EXTEND TIME TO ANSWER OR OTHERWISE RESPOND TO PLAINTIFFS' COMPLAINTS

DEFENDANTS EMBRAER-EMPRESA BRASILEIRA DE AERONAUTICA, S.A. ("EMBRAER") and EMBRAER AIRCRAFT CORPORATION ("EAC") hereby suggest, pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure, that this Court lacks jurisdiction over the subject matter of these cases. Accordingly, the cases originally commenced in this court should be dismissed, and the cases removed to this Court should be remanded to the Circuit Courts in and for the 17th Judicial Circuit, Broward County, Florida.[1]

---

[1] Cases removed to this Court are the following: (1) *Andersen et al. v. Embraer et al.*, Case No. 03-CV-60557-KING/O'SULLIVAN; (2) *Kohlenberg et. al. v. Embraer et. al.*, Case No. 03-CV-60625-KING/O'SULLIVAN; (3) *Yong et al. v. Embraer et al.*, Case No. 03-CV-60626-KING/O'SULLIVAN; and (4) *Vaka et al. v. Embraer et al.*, Case No. 03-CV-60627-KING/O'SULLIVAN.

Cases originally commenced in this Court are: (1) *Vaka et al. v. Embraer et al.*, Case No. 01-CV-3144-KING/O'SULLIVAN; (2) *Yong et al. v. Embraer et al.*, Case No. 01-CV-3145-KING/O'SULLIVAN; (3) *Andersen et al. v. Embraer et al.*, Case No. 01-CV-3146-KING/O'SULLIVAN; and (4) *Kohlenberg et. al. v. Embraer et. al.*, Case No. 01-CV-3148-KING/O'SULLIVAN.

## **PRIOR PROCEEDINGS**

When these actions were commenced and at the time of removal, defendant EMBRAER was considered under existing judicial authority to constitute an "agency or instrumentality of a foreign state" pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1332(a)(2)-(4), 1391(f), 1441(d) & 1602-11, for reasons set forth at length in Motions to Dismiss pursuant to the FSIA that EMBRAER previously filed in each and every one of the eight actions cited in note 1.

Plaintiffs alleged the FSIA as the sole basis for jurisdiction in three of the actions originally commenced in this Court. In the *Vaka* action, Case No. 01-CV-3144-KING/O'SULLIVAN, plaintiffs also alleged diversity as a basis for jurisdiction. However, upon information and belief, none of the four decedents, in *Vaka* or any other case, was a citizen or permanent resident of the United States.

Defendant EMBRAER also is an alien, based and incorporated in Brazil. Defendant EAC is a corporate citizen of Florida. Defendants accordingly deny that complete diversity exists in any of these cases. Defendants formerly contended that the FSIA provided the sole basis for jurisdiction in all four actions originally commenced in this Court. Defendant EMBRAER removed the four parallel state court actions from the Broward County Circuit Court to this Court pursuant to the FSIA removal and jurisdiction provisions, 28 U.S.C. §§1330(a), 1441(d) & 1603. Once all the actions were before this Court, EMBRAER moved to dismiss all of the actions for lack of subject matter jurisdiction, because EMBRAER was entitled to immunity from jurisdiction in the courts of the United States and of the States under the FSIA. See 28 U.S.C. §§ 1603 & 1605(a)(2).

However, on or about April 22, 2003, the United States Supreme Court decided Dole Food Co. v. Patrickson, 123 S. Ct. 1655, 2003 WL 1906158 (April 22,

2003), which held that a defendant such as EMBRAER cannot assert jurisdiction under the FSIA Defendants notified the Court of this decision on April 25, and advised that the parties would advise the Court of their respective positions on jurisdiction on or before May 7, 2003, the due date for the Scheduling Conference Report and Proposed Scheduling Order.

As of May 7, 2003, the parties are at odds with respect to the disposition of these eight related cases now pending in federal court. Plaintiffs, upon information and belief and to the best of our understanding, intend to show that defendant EAC (in Florida) is an "alter ego" of EMBRAER and, therefore, EMBRAER may be dismissed and the Court may retain subject matter jurisdiction.

### ARGUMENT FOR DISMISSAL

Given the present posture of the case (*i.e.*, "alien versus alien" and no "foreign state" defendants), subject matter jurisdiction does not exist. See Dole Food Co. v. Patrickson, 123 S. Ct. 1655, 2003 WL 1906158 (April 22, 2003) (FSIA status determined at time action commenced); Chavez-Organista v. Vanos, 208 F. Supp. 2d 174 (D.P.R. 2002) (aliens not "citizens" for diversity purposes).

Under 28 U.S.C. § 1653, jurisdiction can be cured in an amended pleading, but it cannot be created by amendment. See Aetna Cas. & Surety Co. v. Hillman, 796 F.2d 770, 775-76 (5th Cir. 1986) (substituting new party in order to establish diversity is not permitted). The parties to these proceedings and the Court may be permitted to cobble together some new basis for subject matter jurisdiction. See, e.g., Chemical Leaman Tank Lines, Inc. v. Aetna Casualty & Surety Co., 177 F.3d 210 (3d Cir. 1999) (all parties and the court cooperate to establish basis for jurisdiction when, during the eighth year of litigation, one of the attorneys discovered precedent suggesting

NYOFFICE 586204v1

no jurisdiction existed); E.R. Squibb & Sons v. Accident & Cas. Ins. Co., 160 F.3d 925 (2d Cir. 1998) (salvaging jurisdiction after none was found to exist, sixteen years into the litigation). However, it is possible that jurisdiction may not be curable—and, even if the parties and this Court believe the defect may be cured, the Eleventh Circuit and U.S. Supreme Court could raise the issue *sua sponte*, as could a dissatisfied party (or the Court) during this litigation.

In cases such as Chemical Leaman and E.R. Squibb, the parties and the court all wanted to preserve jurisdiction, and the parties and court had invested many years (eight in Chemical Leaman and sixteen in E.R. Squibb) attempting to resolve their disputes in the federal forum. There have been no substantive proceedings in these cases. Furthermore, the parties and Court in this case are on notice that, whatever may be "right" and "equitable," there are serious problems relating to subject matter jurisdiction. Cf. Indiana Gas Co. v. Home Ins. Co., 141 F.3d 314, 316 (7th Cir.) (rejecting parties' attempts to circumvent jurisdiction). In other words, the Eleventh Circuit could be less sympathetic to "our plight" than the appellate courts were to the parties in Chemical Leaman and E.R. Squibb. See also Advani Enters., Inc. v. Underwriters at Lloyd's, 140 F.3d 157, 160 (2d Cir. 1998) (admiralty jurisdiction sustained, but appellate court raised issue of subject matter jurisdiction *sua sponte* after district court had granted summary judgment in case below).

A judgment entered by a court that lacked subject matter jurisdiction is void, and any time spent litigating the case will have been wasted. See, e.g., Iglesias v. Mutual Life Ins. Co., 156 F.3d 237, 241 (7th Cir. 1998) (issue of subject matter jurisdiction over counterclaim raised *sua sponte*); Indiana Gas, 141 F.3d at 316 (case dismissed after three years after appellate court raised lack of diversity *sua sponte*); Allendale Mut. Ins. Co. v. Excess Ins. Co., 62 F. Supp. 2d 1116, 1120 (S.D.N.Y. 1999) (party dissatisfied with verdict moved to dismiss for lack of subject matter jurisdiction after three years of litigation and trial); Blue Dane

Simmental Corp. v. American Simmental Ass'n, 952 F. Supp. 1399, 1402 (D. Neb. 1997) (court orders party to brief supplemental jurisdiction because "it was apparent the counterclaim were not then independently supported by ... jurisdiction, and because it was dissatisfied with the initial briefs on the question of supplemental jurisdiction"); K. Bell & Assocs. v. Lloyd's Underwriters, 1998 WL 274346 (S.D.N.Y. 1998) (despite six years of litigation, which included rulings on motion to dismiss, motions for summary judgment, a jury trial, and two appellate decisions about to result in a decision in Lloyd's favor, and despite unfairness of giving losing party a "second bite at the apple," action must be dismissed due to lack of diversity) (attached hereto). Rather than proceed in the federal courts, always with the prospect that any proceedings or orders might be deemed void *ab initio*, defendants respectfully submit that the Court should remand the removed action and dismiss the actions originally filed in this Court.

## DEFENDANT EMBRAER'S MOTION TO EXTEND TIME TO ANSWER OR OTHERWISE RESPOND

Defendant EMBRAER has not filed Answers in these proceedings, having appeared by filing Motions to Dismiss which it is now compelled to withdraw. In view of its position that this Court lacks subject matter jurisdiction, defendant EMBRAER respectfully requests leave to extend the time to answer or otherwise respond to plaintiffs' Complaints until after the Court has ruled on this Suggestion to Dismiss. EMBRAER's motion is based on good cause as set forth above and on prior proceedings (*i.e.*, defendants good faith belief that the Court originally had jurisdiction over the subject matter, but that EMBRAER was entitled to immunity from suit in the courts of the United States and of the States, and its good faith belief at this point that any further proceedings in this Court may be a nullity and that filing further pleadings, motions, or other proceedings would be a nullity).

NYOFFICE 586204v1

## CONCLUSION

Defendants respectfully submit that the actions originally commenced in this Court be dismissed and the removed actions remanded to the Circuit Court in and for the 17th Judicial Circuit, Broward County.

Dated:   Miami, Florida
         May 9, 2003

                        Respectfully submitted,

                        LAW OFFICES OF JOHN R. PARSONS, P.A.

By: *[signature]*
    John R.W. Parsons, Esq.
Florida Bar No. 239674
Ingraham Building
25 S.E. Second Avenue, Suite 609
Miami, Florida   33131-1691
Tel: (305) 374-3104
Fax: (305) 377-9805

    - and –

CONDON & FORSYTH
Stephen R. Stegich, Esq.
685 Third Avenue
New York, New York   10017
Tel: (212) 490-9100
Fax: (212) 370-4487

Attorneys for Defendants
EMBRAER-EMPRESA BRASILEIRA   DE
AERONAUTICA, S.A. and EMBRAER
AIRCRAFT CORPORATION

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 9th day of May, 2003, to:

Steven C. Marks, Esq.
Podhurst, Orseck, et al
City National Bank Building, 8th Floor
25 West Flagler Street
Miami, Florida 33130
Tel: (305) 358-2800
Fax:(305) 358-2382

Gerald C. Sterns, Esq.
Sterns & Walker
901 Clay Street
Oakland, CA 94607
Tel: (510) 267-0500
Fax:(510) 267-0506

                             LAW OFFICES OF JOHN R. W. PARSONS, P.A.

                             By:_____
                                JOHN R. W. PARSONS

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

K. BELL & ASSOCIATES, INC., Plaintiff,
v.
LLOYD'S UNDERWRITERS, Defendant.

**No. 92Civ.5249(AJP)(KTD).**

May 26, 1998.

OPINION AND ORDER

PECK, Magistrate J.

*1 Plaintiff K. Bell & Associates, Inc. ("Bell") brought this action against defendant Lloyd's Underwriters ("Lloyd's") in 1992, asserting diversity jurisdiction. Six years later, after decisions on a motion to dismiss, motions for summary judgment, a jury trial, and two Second Circuit decisions were about to result in a final judgment in Lloyd's favor, Bell raised the question of whether diversity jurisdiction really exists. Despite the waste of judicial resources (and the unfairness of allowing Bell to have another bite of the apple in state court), the Court concludes that diversity jurisdiction is lacking, and the case must be dismissed without prejudice.

Lloyd's is not an entity, but rather a consortium of individual investors, known as "Names," that are severally, but not jointly, liable for their fraction of the risk on an insurance policy. Since some of the Lloyd's Names on the insurance policy at issue in this case are New York residents, diversity jurisdiction is lacking. Lloyd's proposal that this Court recharacterize the action as a defendant class under Rule 23 or Rule 23.2, Fed.R.Civ.P., with the named defendants being the English lead underwriters, would solve the problem of lack of diversity, but fails for another reason--Bell's claim against any single Name does not satisfy the diversity jurisdiction amount in controversy requirement.

Accordingly, for the reasons set forth below, this action is dismissed without prejudice for lack of subject matter jurisdiction.

**PROCEDURAL BACKGROUND**

Familiarity with the prior decisions in this case of the Second Circuit and this Court (Judge Duffy and Magistrate Judges Peck and Roberts) is assumed. *K. Bell & Assocs., Inc. v. Lloyd's Underwriters,* No. 97-7397, slip op. (2d Cir. Jan.2, 1998), *vacating,* 129 F.3d 113 (table), 1997 WL 701387 (2d Cir. Nov.10, 1997), *aff'g,* 92 Civ. 5249, 1997 WL 137444 (S.D.N.Y. March 24, 1997) (Peck, M.J.) & 1997 WL 96551 (S.D.N.Y. March 5, 1997) (Peck, M.J.); *K. Bell & Assocs., Inc. v. Lloyd's Underwriters,* 97 F.3d 632 (2d Cir.1996), *rev'g,* 1995 WL 169013 (S.D.N.Y. April 10, 1995) (Roberts, M.J.) & 1994 WL 250183 (S.D.N.Y. June 1, 1994) (Roberts, M.J.); *K. Bell & Assocs., Inc. v. Lloyd's Underwriters,* 827 F.Supp. 985 (S.D.N.Y.1993) (Duffy, D.J.). The Court will briefly review the facts and procedural background relevant to the instant opinion.

Bell, a New York insurance broker, brought this action in 1992 seeking indemnification under its professional liability policy with Lloyd's for Bell's settlement of a lawsuit against it by a third party, American Marine Insurance Group, Inc. ("AMIG"). *See, e.g., Bell v. Lloyd's,* 97 F.3d at 633; *Bell v.Lloyd's,* 1997 WL 701387 at *1; *Bell v. Lloyd's,* 1997 WL 96551 at *1.

In its complaint, Bell alleged diversity jurisdiction, as follows:

1. Plaintiff is a corporation incorporated under the laws of the State of New York and is licensed to act as an insurance broker and reinsurance intermediary.
*2 2. Defendant is a consortium of underwriters operating under the laws of the United Kingdom, and located in the United Kingdom.
3. Jurisdiction is predicated on the diversity of citizenship of the parties and the fact that the amount in controversy exceeds $50,000 pursuant to 28 U.S.C. § 1332(a).
(Cplt.¶¶ 1-3.) Lloyd's answer stated in part:
2. Deny the allegations contained in paragraph 2 of the verified complaint but aver that the defendants sued herein incorrectly as 'Lloyd's Underwriters' are individual persons who are underwriting members of Lloyd's London, England and as such have a principal place of business within and do business under the laws of the United Kingdom.
(Lloyd's Answer ¶ 2.) The case proceeded without any issue being raised as to jurisdiction.

On July 21, 1993, Judge Duffy denied Lloyd's motion to dismiss Bell's claim for breach of contract, waiver, and equitable estoppel, and granted Lloyd's motion to dismiss Bell's claim for punitive damages. *Bell v. Lloyd's,* 827 F.Supp. 985.

The parties then consented to trial before a Magistrate Judge pursuant to 28 U.S.C. § 636(c) On June 1, 1994, Magistrate Judge Roberts denied Lloyd's motion for summary judgment, holding that Bell's claim did not fall within Exclusion (f) of the insurance policy. *Bell v. Lloyd's,* 1994 WL 250183. On April 10, 1995, Magistrate Judge Roberts denied Bell's motion for summary judgment, holding, *inter alia:* there was a material issue of fact as to the reasonableness of the settlement entered into by Bell with AMIG; Exclusion (g) to the insurance policy did not protect Lloyd's; and the amount of damages was not limited to $255,000. *Bell v. Lloyd's,* 1995 WL 169013.

Upon Magistrate Judge Robert's departure from the bench, the case was reassigned to me. In June 1995, I held a jury trial which resulted in a judgment for Bell against Lloyd's for $1,250,000. Following this judgment, Lloyd's appealed to the Second Circuit from Magistrate Judge Roberts' pre-trial decisions. *See Bell v. Lloyd's,* 97 F.3d at 636. The parties did not raise any question as to federal diversity jurisdiction before the Second Circuit.

On September 23, 1996, the Second Circuit reversed Magistrate Judge Roberts' two prior decisions, holding that Exclusion (f) to the insurance policy did apply, and remanded the case for the limited purpose of determining whether Lloyd's was estopped from denying coverage under Exclusion (f). *See Bell v. Lloyd's,* 97 F.3d at 637-39. On March 5, 1997, I held that Lloyd's was not estopped from asserting Exclusion (f), and since the Second Circuit had already determined that Exclusion (f) applied in the absence of estoppel, granted summary judgment for Lloyd's. *Bell v. Lloyd's,* 1997 WL 96551. I denied Bell's motion for reargument on March 24, 1997. *Bell v. Lloyd's,* 1997 WL 137444.

Bell again appealed to the Second Circuit. Bell did not then raise any question as to federal jurisdiction. On November 10, 1997, the Second Circuit affirmed my decisions, finding that Lloyd's was not estopped from relying upon Exclusion (f) and that I had properly denied Bell's motion for reargument. *Bell v. Lloyd's,* 1997 WL 701387. On November 14, 1997, Bell petitioned for rehearing pursuant to Fed.R.App.P. 40, raising for the first time the issue of whether federal diversity jurisdiction was lacking. [FN1] On January 2, 1998, the Second Circuit granted Bell's petition for rehearing, vacated its November 10, 1997 decision, and remanded for determination of the jurisdictional issue. *Bell v. Lloyd's,* No. 97-7397, slip op. (2d Cir. Jan. 2, 1998).

> FN1. According to Bell's rehearing petition, Bell's counsel became aware of the jurisdictional issue while attending oral argument in the Second Circuit on October 28, 1997 in another Lloyd's case, *Advani Enterprises, Inc. v. Underwriters at Lloyd's,* during which the Second Circuit panel *sua sponte* raised the question of whether diversity jurisdiction exists where the Lloyd's Names are not all diverse to the plaintiff. (*See* Bell's 2d Cir. Pet. & Br. for Reh'g at 3-4; *see also* 5/13/98 Oral Arg. Tr. at 8.) While it is clear that counsel for both parties (objectively) should have been aware much earlier in this case of the developing case law as to diversity jurisdiction and Lloyd's, the Court accepts Bell's counsel's assertion that (subjectively) he was not aware of the issue until it was raised in an unrelated

Second Circuit oral argument that he attended. (*See* 5/13/98 Oral Arg. Tr. at 8-12.) The Court also commends Lloyd's counsel, Mr. Fraser, for a civility all too often lacking in lawyers today; Lloyd's specifically declined to request any sanctions inquiry under Rule 11 or 28 U.S.C. § 1927. (*See* 5/13/98 Oral Arg. Tr. at 12.)

*Jurisdictional Facts As to Lloyd's Developed on Remand*

*3 To analyze the jurisdictional issue, it is necessary to understand the structure of Lloyd's:
> Lloyd's is not an insurance company, but instead functions as a marketplace where investors buy and sell insurance risks. These investors--also known as "Names"--invest funds and pledge their assets as security for insurance risks offered in the Lloyd's market.
> Names do not actively participate in the business of underwriting risks, but instead appoint a managing agent to represent them. In turn, the managing agent employs an active underwriter to underwrite risks for the Names. Each Name is severally, but not jointly, liable to the insured for his fraction of the risk on a given policy.

*Long Island Lighting Co. v. Aetna Cas. & Sur. Co.*, 96 Civ. 9664, 1997 WL 567342 at *1 (S.D.N.Y. Sept.11, 1997) (record citations omitted); *see also, e.g., Indiana Gas Co. v. Home Ins. Co.*, Nos. 97-1381, 97-1328, 1998 WL 154848 at *1-3 (7th Cir. April 6, 1998); *Humm v. Lombard World Trade, Inc.*, 916 F.Supp. 291, 293 (S.D.N.Y.1996).

On remand here, Lloyd's counsel informed the Court that more than 30 Lloyd's syndicates were the insurers on the Bell policy. (*See* Fraser 5/1/98 Aff. ¶¶ 1-5 & Exs. A-C.) The Active Underwriters for those syndicates are residents of the United Kingdom and not residents of New York. (Fraser 5/1/98 Aff. ¶¶ 4 05.) The "actual number of Names having interests in the policy ... number in the thousands." (Fraser 4/29/98 Aff. ¶ 4.) Lloyd's counsel readily conceded that some of those Names are New York residents. (Fraser 4/29/98 Aff. ¶¶ 2-3 & Ex. at pp. 12-14; 5/13/98 Oral Arg. Tr. at 12-13.)

Lloyd's counsel also conceded that while the lead syndicate's liability under the policy exceeds the $50,000 jurisdictional amount in controversy requirement, no single Name has exposure of $50,000 or more under the policy. (5/13/98 Oral Arg. Tr. at 15.) As in all Lloyd's policies, the Names are severally liable and not jointly liable under the policy. (5/13/98 Oral Arg. Tr. at 14, 21.)

## ANALYSIS

Although raised at the eleventh hour by Bell, it is axiomatic that "[s]ubject matter jurisdiction cannot be waived and the issue may be raised at any point during the litigation," including by the plaintiff who first asserted jurisdiction. *Chase Manhattan Bank, N.A. v. Aldridge*, 906 F.Supp. 870, 872 (S.D.N.Y.1995); *accord, Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982); *Tongkook America, Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 786 (2d Cir.1994); 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure: Civil 2d* § 1393 at 764-76 (2d ed.1990).

The Second Circuit recently addressed the effect of Lloyd's structure on the diversity jurisdiction analysis:
> Both Underwriters at Lloyd's and Syndicate 735 are unincorporated associations. Consequently, for jurisdictional purposes, they do not have legal identities separate from their members. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990). Thus, courts faced with the task of determining the citizenship of a Lloyd's syndicate have done so in one of two ways. Under the first, and more popular, approach a Lloyd's syndicate is a citizen of every state in which its individual investors, known as "Names," are citizens. *See, e.g., Humm v. Lombard World Trade, Inc.*, 916 F.Supp. 291 (S.D.N.Y.1996); *Chase Manhattan Bank, N.A. v. Aldridge*, 906 F.Supp. 870 (S.D.N.Y.1995); *Lowsley-Williams v. North River Ins. Co.*, 884 F.Supp. 166 (D.N.J.1995); *Transamerica Corp. v. Reliance Ins. Co.*, 884 F.Supp. 133 (D.Del.1995); *Bath Iron Works Corp. v. Certain Member Cos. of Inst. of London Underwriters*, 870 F.Supp. 3 (D.Me.1994). Under the second approach, a Lloyd's syndicate is only a citizen of the state in which its managing/lead underwriter is a citizen. *See Certain Interested Underwriters at Lloyd's, London, Eng. v. Layne*, 26 F.3d 39 (6th Cir.1994).

*4 *Advani Enters., Inc. v. Underwriters at Lloyd's,* No. 726, Docket 97-7664, 140 F.3d 157, 1998 WL 133755 at *3 (2d Cir. March 20, 1998). While noting the two different approaches, the Second Circuit in *Advani* did "not decide ... which approach best determines the citizenship of Lloyd's syndicate because under either approach the pleadings are lacking," and, moreover, the Second Circuit found admiralty jurisdiction to exist. *Id.* at *3-4.

Since the Second Circuit's *Advani* opinion, Judge Easterbrook of the Seventh Circuit has addressed the issue in a thorough and well-reasoned opinion joined by Chief Judge Posner. *Indiana Gas Co. v. Home Ins. Co.,* Nos. 97-1381, 97- 1328, 1998 WL 154848 (7th Cir. April 6, 1998); *see also, e.g., Humm v. Lombard World Trade, Inc.,* 916 F.Supp. 291, 295-96 (S.D.N.Y.1996) (rejects *Layne* as inconsistent with New York law as to agency). The Court is persuaded by the *Indiana Gas* and *Humm* Courts' analyses and therefore joins those courts in rejecting the Sixth Circuit's opinion in *Certain Interested Underwriters at Lloyd's, London, Eng. v. Layne,* 26 F.3d 39 (6th Cir.1994).

Indeed, the Court notes that Lloyd's counsel disclaimed reliance on *Layne* at oral argument, conceding that *Layne* was based on Tennessee state law as to agency that is not analogous to the law of New York (or most other states, for that matter). (*See* 5/13/98 Oral Arg. Tr. at 13-14.)

The Court therefore finds that "Lloyd's" is a citizen of every state in which its Names are citizens. This conclusion is in accord with the holdings of all other district court decisions in the Second Circuit that have addressed the issue. *See Long Island Lighting Co. v. Aetna Cas. & Sur. Co.,* 96 Civ. 9664, 1997 WL 567342 at *2-3 (S.D.N.Y. Sept.11, 1997); *Humm v. Lombard World Trade, Inc.,* 916 F.Supp. at 297-98; *Chase Manhattan Bank, N.A. v.. Aldridge,* 906 F.Supp. 870, 872-73 (S.D.N.Y.1995); *see also* 5/13/98 Oral Arg. Tr. at 12 (Lloyd's counsel concedes that "[e]xisting case law in this district, I would concede, is adverse to diversity jurisdiction" over Lloyd's). [FN2]

> FN2. *Accord, e.g., Ashenden v. Lloyd's of London,* 934 F.Supp. 992, 995 n. 2 (N.D.Ill.1996); *Certain Underwriters at Lloyd's, London v. P.J.T., Inc.,* No. 96 C 3628, 1996 WL 377081 at *1-2 (N.D.Ill. June 27, 1996); *Transamerica Corp. v. Reliance Ins. Co.,* 884 F.Supp. 133, 137-39 (D.Del.1995); *Lowsley-Williams v. North River Ins. Co.,* 884 F.Supp. 166, 169-72 (D.N.J.1995); *Bath Iron Works Corp. v. Certain Member Cos. of Inst. of London Underwriters,* 870 F.Supp. 3, 4-8 (D.Me.1994); *International Ins. Co. v. Certain Underwriters at Lloyd's London,* No. 88 C 9838, 1991 WL 693319 at *2-9 (N.D.Ill. Sept.16, 1991); *Queen Victoria Corp. v. Insurance Specialists of Hawaii, Inc.,* 711 F.Supp. 553, 554 (D.Haw.1989).

Since it is undisputed that Bell is a New York corporation and one or more of the Lloyd's Names are New York residents, diversity jurisdiction is lacking here.

To save jurisdiction (and thus to save its judgment dismissing Bell's complaint), Lloyd's asks the Court to recharacterize this case, pursuant to 28 U.S.C. § 1653, [FN3] as either a Rule 23.2 [FN4] or 23 [FN5] defendant class action. (*See generally* Lloyd's 4/22/98 & 4/30/98 Brs.; 5/13/98 Oral Arg. Tr. at 13.) As either type of class action, Lloyd's asserts that only the citizenship of the class representatives would need be considered in the diversity inquiry, and Lloyd's proposes to have the United Kingdom lead underwriters serve as the named class representatives. (*See* Lloyd's 4/30/98 Br. at 2; 5/13/98 Oral Arg. Tr. at 13, 16.)

> FN3. 28 U.S.C. § 1653 provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."

> FN4. Rule 23.2 provides in pertinent part:
> **Actions Relating to Unincorporated Associations**

> An action brought by or against the members of an unincorporated association as a class by naming certain members as representative parties may be maintained only if it appears that the representative parties will fairly and adequately protect the interests of the association and its members.

> FN5. Rule 23 provides, in pertinent part:
> **(a) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
> **(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
> ....
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

*5 The Court assumes, without deciding, that it can recharacterize Bell's complaint on Lloyd's motion pursuant to 28 U.S.C. § 1653. Under that scenario, at least in the procedural posture of this case--where class certification would protect the Court's jurisdiction and hence Lloyd's "victory" in this case--the Court finds that certification of a defendant class of Lloyd's Names, represented by the United Kingdom lead underwriters, would be appropriate under either Rule 23.2 or Rule 23. [FN6]

> FN6. The proposed class, consisting of the hundreds if not thousands of Names, all are allegedly liable under the same insurance contract. There thus are questions of law and fact common to the class, and those questions predominate over any questions affecting any individual class members. The defenses of the representatives are typical of those of the class. And there can be no doubt here that the representatives will fairly and adequately protect the interests of the class: The proposed representatives (or more precisely, Lloyd's counsel) have successfully defended against these claims. Should the representatives successfully persuade the Court that it has jurisdiction, the judgment in favor of the proposed class would stand, a result in the best interests of all members of the proposed class.

The class action device does not save federal jurisdiction here, however, because the case still would not meet the $50,000 diversity jurisdiction amount in controversy requirement. [FN7]

> FN7. 28 U.S.C. § 1332(a) was amended in October 1996 to increase the amount in controversy requirement to $75,000 from $50,000 for actions brought after January 19, 1997. Since the instant action was brought on July 14, 1992, the $50,000 amount is applicable.

A corollary of the Court's holding that the citizenship of each Lloyd's Name must be considered for diversity purposes is that the amount of the claim against each individual Name, and *not* against "Lloyd's" (*i.e.*, all Names) in the aggregate, must be considered for amount in controversy purposes. It is well-established that aggregation of a plaintiff's claims against multiple defendants is impermissible unless defendants' liability is joint, rather than several: "A plaintiff must allege that the amount in controversy is in excess of the

jurisdictional amount against each defendant unless the plaintiff's claims against the defendants are common and undivided so that the defendant's liability is properly characterized as joint and not several." 15 James W. Moore et al., *Moore's Federal Practice* § 102.108[2] at p. 102-189 (3d ed.1998); *see also, e.g., Sovereign Camp, W.O.W. v. O'Neil*, 266 U.S. 292, 295, 45 S.Ct. 49, 50, 69 L.Ed. 293 (1924) ("It is the settled general rule ... that in a suit based on diversity of citizenship brought against several defendants ... which are separate and distinct ... the test of jurisdiction is the amount of each separate claim, and not their aggregate amount"); *North Am. Fin. Group, LLC v. Suburban Air Sys., Inc.*, 96 Civ. 2330, 1996 WL 345790 at *1 (S.D.N.Y. June 24, 1996) (" '[W]hen the defendants' liability is several, ... aggregation is not allowed' "); *Crouch v. Atlas Van Lines, Inc.*, 834 F.Supp. 596, 604 (N.D.N.Y.1993) ("While the courts can aggregate all of the plaintiff's claims against one defendant to satisfy [the $50,000] requirement, or can aggregate claims against two or more defendants who are jointly liable, it cannot aggregate the claims against two essentially separate individual defendants to reach this amount.") (citations omitted); *Congram v. Giella*, 91 Civ. 1134, 1992 WL 349845 at *3 (S.D.N.Y. Nov.10, 1992) ("In a diversity case involving a single plaintiff and multiple defendants, aggregation of claims is not proper unless the liability to the plaintiff is common, undivided or joint. '[I]t is immaterial that the claims are transactionally related or that they arise from a common origin or document.' "); *Uniroyal, Inc. v. Heller*, 65 F.R.D. 83, 87-88 (S.D.N.Y.1974) (plaintiff cannot aggregate claims against multiple defendants when liability is several).

*6 Since the liability of the individual Names here is several, not joint, Bell's claims against each Name cannot be aggregated. Two prior decisions in this District have reached the same conclusion as to the jurisdictional amount in controversy and Lloyd's Names. *See Long Island Lighting Co. v. Aetna Cas. & Sur. Co.*, 1997 WL 567342 at *3 (jurisdiction over Lloyd's names "will depend also on the percentage share of liability of each Name, to assure that the statutory amount in controversy requirement has been met as well."); *Chase Manhattan Bank, N.A. v. Aldridge*, 906 F.Supp. at 874 (no individual Name's amount satisfies the jurisdictional amount, and "[t]he claims cannot be aggregated ... because the liability for the individual underwriters for their proportion of the risk is strictly several.").

The fact that Lloyd's seeks to recharacterize the case as a defendant class action does not change this conclusion. The aggregation doctrine is based in statute, and therefore neither Rule 23 nor Rule 23.2 can change this doctrine to expand the Court's jurisdiction. *See, e.g., Zahn v. International Paper Co.*, 414 U.S. 291, 299, 94 S.Ct. 505, 511, 38 L.Ed.2d 511 (1973) (" 'The doctrine that separate and distinct claims could not be aggregated ... is based ... upon th[e Supreme] Court's interpretation of the statutory phrase 'matter in controversy.' ... Nothing in the amended Rule 23 changes this doctrine.") (quoting *Snyder v. Harris*, 394 U.S. 332, 336, 89 S.Ct. 1053, 1057, 22 L.Ed.2d 319 (1969)); *Snyder v.. Harris*, 394 U.S. at 337-38, 89 S.Ct. at 1057 (plaintiff class action fails where claims of class members do not satisfy the jurisdictional amount without resort to aggregation; the Supreme Court has "held that the rule making authority was limited by 'the inability of a court, by rule, to extend or restrict the jurisdiction conferred by a statute.' ... We have consistently interpreted the jurisdictional statute passed by Congress as not conferring jurisdiction where the required amount in controversy can be reached only by aggregating separate and distinct claims. The interpretation of that statute cannot be changed by a change in the Rules."); *see also Gilman v. BHC Sec., Inc.*, 104 F.3d 1418 (2d Cir.1997) (plaintiff class members' claims for punitive damages cannot be aggregated to satisfy jurisdictional amount in controversy requirement). [FN8]

> FN8. Indeed, Lloyd's has presented no authority that there is a different aggregation rule for a defendant class (where defendant's liability is several not joint) than a plaintiff class action. (Fraser 5/18/98 Letter to Court.)

Lloyd's has represented that no individual Name has exposure under the policy of more than $50,000. (5/13/98 Oral Arg. Tr. at 15.) Therefore, use of a Rule 23.2 or a Rule 23 defendant class action, even if otherwise permissible, would not preserve federal jurisdiction in this case because Bell's claim against any individual Name does not satisfy the $50,000 jurisdictional amount in controversy requirement.

## CONCLUSION

For the reasons set forth above, the Court has no choice but to dismiss this action for lack of federal subject matter jurisdiction.

The Clerk of Court is directed to enter judgment dismissing this action without prejudice for lack of jurisdiction.

1998 WL 274346 (S.D.N.Y.)

END OF DOCUMENT